**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**WONZELL C.,**[1]

   **Plaintiff,**

         v.

**MARTIN O'MALLEY, Commissioner of**
**Social Security,**[2]

   **Defendant.**

**Civil Action No. 22-3828 (JDB)**

**MEMORANDUM OPINION & ORDER**

Plaintiff Wonzell C. brought this action challenging the Commissioner of Social Security's final decision denying him supplemental security income benefits.  See 42 U.S.C. § 405(g).  Now before the Court are Magistrate Judge Harvey's Report and Recommendation ("R&R"), plaintiff's objection thereto, and the Commissioner's response to that objection.  For the reasons that follow, the Court will reject plaintiff's objection, adopt the R&R, and accordingly grant the Commissioner's motion for judgment of affirmance and deny plaintiff's motion for judgment of reversal.

**Background**

**I.    Statutory and Regulatory Framework**

The Social Security Act of 1935 provides, as relevant here, for supplemental security income benefits for financially eligible "disabled" individuals.  42 U.S.C. §§ 1381, 1382(a).  "To

---

[1] Based on a recommendation from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, plaintiff's name has been partially redacted due to privacy concerns.  See Mem. from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt., to Chief Judges of the U.S. Cts. of Appeals et al. (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf [https://perma.cc/N9T2-U5XG].

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the current Commissioner of Social Security is substituted as defendant.

be eligible for [supplemental security income] based on disability, a claimant must demonstrate that disability prevents her from earning a living." Cox v. Kijakazi, 77 F.4th 983, 986 (D.C. Cir. 2023).  Specifically, the Act requires that a successful claimant be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that either "can be expected to result in death" or "has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Any such impairment must be severe enough that a claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c(a)(3)(B).

Claimants seeking supplemental security income benefits must apply to the Social Security Administration, which evaluates claimants' alleged conditions and determines whether each claimant is indeed "disabled" within the meaning of the Act.  Id. § 1383(c)(1)(A).  If a claimant's initial application is denied, he may request a hearing before an administrative law judge ("ALJ"). Id.; see also 20 C.F.R. § 416.1400.  The ALJ then follows a "five-step sequential evaluation process" to determine whether the claimant is disabled.  20 C.F.R. § 416.920; see also Cox, 77 F.4th at 986–87 (summarizing steps).  As relevant here, the ALJ must ascertain the claimant's residual functional capacity, which is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1); see also Cox, 77 F.4th at 986 (noting that the "residual functional capacity inquiry is designed to determine the claimant's uppermost ability to perform regular and continuous work-related physical and mental activities in a work environment" (internal quotation marks omitted)).  In determining a claimant's residual functional capacity, the ALJ conducts a holistic analysis, considering each of the claimant's "medically determinable impairments" and "all the relevant evidence in [the] case record."  20 C.F.R. § 416.945(a)(1)–(2).

When considering mental impairments (as opposed to physical ones), the ALJ evaluates the severity of the claimant's impairments across four broad functional areas: the abilities to (1) "[u]nderstand, remember, or apply information," (2) "interact with others," (3) "concentrate, persist, or maintain pace," and (4) "adapt or manage oneself." Id. § 416.920a(c)(3).  The claimant's impairment in each area is assessed on a five-step scale: "[n]one, mild, moderate, marked, [or] extreme." Id. § 416.920a(c)(4).

The ALJ ultimately uses the residual functional capacity to determine whether the claimant can still work—either with reference to the claimant's past relevant work or with reference to other jobs in the national economy to which the claimant could adjust.  42 U.S.C. § 1382c(a)(3)(B).  If so, the claimant is not disabled within the meaning of the Act.  Id.

## II.   Factual Background and Procedural History

The Court adopts Judge Harvey's thorough description of plaintiff's claims, the procedural history, and the ALJ's decision, see R&R [ECF No. 17] at 4–15, and will only briefly highlight the points that bear on plaintiff's objection to the R&R.

Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act in July 2019, and for supplemental security income benefits under Title XVI of the Act in September 2019.  Admin. R. [ECF No. 8] ("AR") at 371, 373.  His case proceeded through the administrative review process.  In January 2021, plaintiff amended his alleged disability onset date and withdrew his Title II claim, leaving only his claim for supplemental security income benefits.  Id. at 1189–90; see id. at 16.  An ALJ held a hearing in February 2022 and subsequently issued a decision concluding that plaintiff was not "disabled" within the meaning of the Act and thus not entitled to benefits.  Id. at 15, 34.

As relevant here, the ALJ considered opinion evidence submitted by seven medical professionals, including Dr. Maia Coleman King, a licensed psychologist, and Dr. Lalit Narayan, plaintiff's primary care provider.  See id. at 30–31.  The ALJ found many of these professionals' opinions persuasive, but found Dr. King's and Dr. Narayan's opinions unpersuasive due largely to a lack of consistency with the rest of the evidence.  Id. at 31; see 20 C.F.R. § 404.1520c(a), (c)(1)– (2) (providing that ALJs shall not "defer or give any specific evidentiary weight . . . to any medical opinion(s)" but rather shall "evaluate the[ir] persuasiveness" in light of, inter alia, their support in objective medical evidence and their consistency "with the evidence from other medical sources and nonmedical sources").

In her evaluation, Dr. King determined that plaintiff had (1) marked limitations in his ability to "understand, remember, or apply complex directions and instructions" and "maintain personal hygiene and appropriate attire," (2) moderate limitations in his ability to "interact adequately with supervisors, co-workers, and the public," "sustain concentration and perform a task at a consistent pace," "sustain an ordinary routine and regular attendance at work," and "regulate emotions, control behavior, and maintain his well-being," and (3) mild or no limitations in the remaining areas.  AR at 902.  The ALJ "d[id] not find [Dr. King's] opinion persuasive because, while it [was] supported by a direct examination of [plaintiff], it [was] not consistent with the rest of the evidence."  Id. at 31.  In particular, the ALJ observed that the opinion was inconsistent with the findings of multiple mental status examinations of plaintiff during the same period.  Id. at 23, 31; see also R&R at 25 (citing relevant examinations and observing that "[t]hose mental status examinations include no fewer than six evaluations in the months around Dr. King's evaluation in which various medical practitioners found [p]laintiff to be, cognitively, largely normal").  The ALJ also noted "the lack of neuropsychological testing in the record showing that

[plaintiff] had a significant cognitive or intellectual impairment."  AR at 31.  And, as to Dr. King's finding of a marked limitation related to maintaining personal hygiene and appropriate attire, the ALJ noted that this was inconsistent with both Dr. King's own observation that plaintiff was appropriately dressed and well-groomed at the appointment and with plaintiff's wife's representation that he had no issues with personal care.  Id. at 31 (citing id. at 432, 900).

This skepticism notwithstanding, the ALJ still cited Dr. King's opinion in his analysis.  See id. at 23 (repeatedly citing Exhibit B4F).  His assessment of plaintiff's mental impairments tracked Dr. King's in significant ways: like Dr. King, he concluded that plaintiff had a moderate limitation as to most of the functional areas.  See id. at 22–24.  And the ALJ's residual functional capacity determination accounted for these limitations: the ALJ concluded that plaintiff "can only occasionally interact with supervisors, co-workers, and the public," "can only occasionally adjust to changes in workplace settings," and should be "limited to working in two-hour increments."  Id. at 24; see id. at 28.

After completing the evaluation process (including with respect to various physical impairments not at issue here), the ALJ concluded that, given plaintiff's "age, education, work experience, and residual functional capacity, [he] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Id. at 34.  Hence, the ALJ found plaintiff not to be "disabled" within the meaning of the Social Security Act.  Id.

Plaintiff appealed to the Social Security Administration's Appeals Council, which declined plaintiff's request for review—making the ALJ's decision the final decision of the Commissioner. Id. at 1.  Plaintiff then filed in this Court pursuant to 42 U.S.C. § 405(g).  The case was assigned to Magistrate Judge Harvey for full case management.  Jan. 9, 2023 Order [ECF No. 3]; Jan. 9, 2023 Min. Entry.  Plaintiff filed a motion for judgment of reversal of the Commissioner's decision,

see Mot. for J. of Reversal [ECF No. 10] ("Mot."), the Commissioner filed a joint opposition

thereto and motion for judgment of affirmance, see Def.'s Mot. for J. of Affirmance & in Opp'n

to Mot. [ECF No. 14], and plaintiff filed a reply, see Pl.'s Reply to Def.'s Mem. in Supp. for J. of

Affirmance [ECF No. 16].   Plaintiff's central argument was that the ALJ violated 20 C.F.R.

§ 404.1520c in finding Dr. King's and Dr. Narayan's opinions unpersuasive and allegedly not

considering these opinions when determining plaintiff's residual functional capacity.   Mot. at 8.

As relevant here, plaintiff primarily took issue with the ALJ's evaluation of Dr. King's opinion

regarding plaintiff's ability to maintain appropriate hygiene and attire.   See id. at 10–12.   Plaintiff

also argued, albeit briefly, that the ALJ "did not account for all of Dr. King's opinions" and that

"the ALJ's residual functional capacity does not account for," inter alia, plaintiff's "issues with

regulating emotion, controlling his behavior, or maintaining his own well-being."   Id. at 13.[3]

In a thoughtful Report and Recommendation, Judge Harvey recommended denying

plaintiff's motion and granting the Commissioner's motion.   He explained that plaintiff's

generalized attack on the ALJ's treatment of Dr. King's opinion was misplaced:

> [T]he ALJ agreed with many of Dr. King's findings [(implicitly if not explicitly)]—
> specifically, her findings regarding Plaintiff's ability to interact with others in the
> workplace and concentrate, persist, or maintain pace, as well as her findings
> regarding Plaintiff's ability to regulate emotions, control his behavior, and maintain
> his well-being . . . .   More, the ALJ's [residual functional capacity] in fact
> incorporated accommodations related to Dr. King's opined marked limitations on
> Plaintiff's ability to perform complex tasks by limiting him to "unskilled, low-stress
> work" and only simple, routine tasks.

---

[3] Recall that mental impairments are initially assessed across four broad functional areas, including
"adapt[ing] or manag[ing] oneself."   20 C.F.R. § 416.920a(c)(3).   That area encompasses "the abilities to regulate
emotions, control behavior, and maintain well-being in a work setting."   20 C.F.R. § Pt. 404, Subpart P, App. 1,
§ 12.00(E)(4).   One example of an ability falling under this umbrella is "maintaining personal hygiene and attire
appropriate to a work setting."   Id.   Throughout his briefing, however, plaintiff treats an impairment in "maintaining
hygiene and appropriate attire" as separate and apart from—rather than subsidiary to—an impairment in "regulating
emotion, controlling behavior, and maintaining well-being."   See, e.g., Mot. at 13.   The Court thus understands
plaintiff's references to the latter category as encompassing abilities in the "adapt or manage oneself" area other than
maintaining personal hygiene and attire.

R&R at 19–20.  Judge Harvey went on to explain that the ALJ properly considered 20 C.F.R. § 404.1520c's supportability and consistency factors in evaluating Dr. King's and Dr. Narayan's opinions and that the ALJ's determinations were supported by substantial evidence.  See R&R at 21–32.  In line with plaintiff's presentation of the issues, Judge Harvey devoted particular attention to Dr. King's opinion regarding plaintiff's ability to maintain appropriate hygiene and attire.  See id. at 21–26.

Plaintiff timely objected to the R&R.  See Pl.'s Obj. to Magistrate Judge's R&R [ECF No. 18] ("Obj.").  Plaintiff does not appear to take issue with the R&R's assessment of Dr. Narayan's opinion or Dr. King's opinion as to maintaining hygiene and appropriate attire.  See id. at 2–3. Rather, plaintiff's sole objection is to the R&R's treatment of one of Dr. King's other opinions: her determination that plaintiff had moderate impairment as to "regulating emotions, controlling behaviors, and maintaining . . . well-being."  Id. at 3.  Plaintiff contends that the ALJ "failed to account for . . . this opinion" and that "[u]nlike the other opinions that the ALJ allegedly accounted for, and unlike Dr. King's opinion regarding hygiene issues . . . , neither the ALJ nor the Magistrate Judge explain how these moderate impairments were accounted for in the residual functional capacity or elsewhere addressed in the decision."  Id.

The Commissioner filed a response to this objection.  See Def.'s Resp. to Obj. [ECF No. 19].  Plaintiff's objection, the R&R, and the underlying motions are thus now ripe for decision.

## Legal Standard

A Social Security claimant may seek judicial review in a district court of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The court must uphold the Commissioner's decision so long as it "is based on substantial evidence in the record and correctly applies the relevant legal standards."  Butler v. Barnhart, 353

F.3d 992, 999 (D.C. Cir. 2004).  "Substantial-evidence review is highly deferential to the agency fact-finder, requiring only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Rossello ex rel. Rossello v. Astrue, 529 F.3d 1181, 1185 (D.C. Cir. 2008); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  It requires "more than a scintilla, but . . . less than a preponderance of the evidence."  Butler, 353 F.3d at 999 (internal quotation marks omitted).  "The claimant bears the burden of demonstrating that the ALJ's decision was not based on substantial evidence or contained an error of law."  Callaway v. Berryhill, 292 F. Supp. 3d 289, 293 (D.D.C. 2018).

When, as here, issues come before a district court by way of a magistrate judge's Report and Recommendation, the court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); see also LCvR 72.3(b) (specifying that proper objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection").  Objections that are "conclusory," "general," or simply a "reiterat[ion]" of a plaintiff's prior arguments are not "proper" and thus engender clear error (rather than de novo) review.  Darlene M. v. O'Malley, Civ. A. No. 20-1817 (RDM), 2024 WL 2813317, at *4 (D.D.C. June 3, 2024) (internal quotation marks omitted).  And a court need not "review those portions of a magistrate judge's report to which no objection is made."  Id.; see also Callaway, 292 F. Supp. 3d at 293.

## Analysis

Plaintiff's sole objection to the R&R is that Dr. King's opinion regarding plaintiff's "moderate impairment in regulating emotions, controlling behaviors, and maintaining . . . well-being" was allegedly not "accounted for in the residual functional capacity or elsewhere addressed

in the [ALJ's] decision," and that "neither the ALJ nor the Magistrate Judge" address this issue. Obj. at 3.[4]  This argument fails for two reasons.

First, plaintiff has not and cannot show—as he must—that any alleged deficiency in the ALJ's analysis was prejudicial.   The harmless-error rule applies in judicial review of the Commissioner's decisions.   See Saunders v. Kijakazi, 6 F.4th 1, 4 (D.C. Cir. 2021).   Thus, a claimant bears the burden of showing that any error in the ALJ's analysis was harmful and that a more restrictive residual functional capacity should apply.   See, e.g., O'Brien v. Comm'r of Soc. Sec., 819 F. App'x 409, 416 (6th Cir. 2020); Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018); see also Shinseki v. Sanders, 556 U.S. 396, 409–10 (2009).   Plaintiff has not made any meaningful attempt to carry his burden on this point.   See Obj. at 3 (alleging "not harmless" error without elaboration).   And it is not clear to the Court how he could.   As discussed above and in the R&R, while the ALJ did not find Dr. King's opinion persuasive as a whole, his top-line assessments of plaintiff's mental impairments (with the exception of hygiene and attire) largely tracked those of Dr. King.   These limitations were then accounted for in the ALJ's residual functional capacity determination. AR at 22–24, 28.   Hence, it is not clear how according different

---

[4] Plaintiff asks the Court to review the arguments set forth in his underlying briefing "in addition to" the single argument advanced in his objection.  Obj. at 2.  The Court has carefully reviewed the R&R, the underlying briefing, the ALJ's decision, and the record materials.  But to the extent plaintiff seeks de novo consideration of his prior arguments, the Court declines.  For one thing, such incorporation by reference is disfavored.  See, e.g., Leopold v. U.S. Dep't of Just., Civ. A. No. 17-2819 (APM), 2024 WL 2739550, at *3 (D.D.C. Mar. 25, 2024).   More fundamentally, this would short-circuit the established process for district court review of R&Rs.  See Fed. R. Civ. P. 72(b)(3); LCvR 72.3(b).

Plaintiff's objection also includes broad introductory language regarding the ALJ's "fail[ure] to properly evaluate the medical opinions of record."  Obj. at 2.  The Court understands this as prefatory language to plaintiff's specific objection, not as an independent objection to the R&R.  But to the extent it is an independent objection, it is wholly conclusory and thus engenders only clear error review.  See Darlene M., 2024 WL 2813317, at *4.  Having carefully reviewed the R&R, the Court concludes there was no error, let alone clear error.

Finally, plaintiff's objection makes passing reference to "a number of functional opinions" rendered by Dr. King.  Obj. at 3.  Because plaintiff only "specifically" objects regarding the moderate impairment as to "regulating emotions, controlling behaviors, and maintaining . . . well-being," the Court will confine its analysis to that issue. LCvR 72.3(b).  In any event, the analysis is unlikely to meaningfully differ as to Dr. King's other opinions.

weight to Dr. King's "regulating emotions, controlling behaviors, and maintaining . . . well-being" impairment opinion could compel a different finding.

Second, even assuming (counterfactually) a meaningful divergence between the ALJ's analysis and Dr. King's opinion on this point, the ALJ properly determined that Dr. King's opinion was unpersuasive.  The more serious limitations noted in Dr. King's opinion were inconsistent with mental status examinations performed by other medical professionals around the same period, see AR at 23, 31; R&R at 25–26, and the ALJ was entitled to discount Dr. King's opinion on that basis, see 20 C.F.R. § 404.1520c(a).  "[I]t is not this Court's job to second-guess the ALJ by reweighing the evidence."  Callaway, 292 F. Supp. 3d at 298.

### Conclusion

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [18] plaintiff's objection to [17] Magistrate Judge Harvey's Report and Recommendation is **REJECTED**; it is further

**ORDERED** that the Report and Recommendation is **ADOPTED** in full; it is further

**ORDERED** that [10] plaintiff's motion for judgment of reversal is **DENIED**; and it is further

**ORDERED** that [14] the Commissioner's motion for judgment of affirmance is **GRANTED**.

**SO ORDERED**.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: July 3, 2024